FEAR WADDELL, P.C.
Peter L. Fear, No. 207238
pfear@fearlaw.com
Gabriel J. Waddell, No. 256289
gwaddell@fearlaw.com
Peter A. Sauer, No. 255957
psauer@fearlaw.com
7650 N. Palm Avenue, Suite 101
Fresno, California 93711
(559) 436-6575
(559) 436-6580 (fax)

Attorney for Plaintiffs JASKARAN SIHOTA,
KEWAL SINGH, AND JASWINDER KAUR

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>BHUPINDER SIHOTA<br><br>Debtor. | Case No. 20-10568-A-7<br><br>Chapter 7 |
| JASKARAN SIHOTA, KEWAL SINGH, and JASWINDER KAUR,<br><br>Plaintiffs,<br>vs.<br><br>BHUPINDER SIHOTA<br><br>Defendants. | Adv. Proc. No. ____________<br><br>**COMPLAINT TO DETERMINE THE DISCHARGEABILITY OF CERTAIN DEBT (11 U.S.C. § 523)** |

COMES NOW, the above-named Plaintiffs, JASKARAN SIHOTA, an individual; KEWAL SINGH, an individual; and JASWINDER KAUR, an individual (collectively referred to as "Plaintiffs" or "Toronto Group") and hereby alleges as follow:

1. This is an action for determination of the dischargeability of certain debt, filed pursuant to § 523 of the Bankruptcy Code.

**PARTIES**

2. At all times relevant to this complaint, Plaintiff Jaswinder Kaur ("Jaswinder') was a resident of Fresno County, State of California.

3. At all times relevant to this complaint, Plaintiffs Jaskaran Sihota ("Jaskaran") and Kewal Singh Sihota ("Kewal") were citizens of the Province of Ontario, Canada.

4. At all times relevant to this complaint Defendant Bhupinder Sihota is an individual is and was a resident of Fresno County, State of California.

**JURISDICTION and VENUE**

5. Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United Stated Code in that this proceeding arises in and is related to the above-captioned Chapter 12 case under Title 11 and concerns dischargeability of debt of the Debtors in that case.

6. This Court has both personal and subject matter jurisdiction to hear this case pursuant to Section 1334 of Title 28 of the United States Code, and is referred to the Bankruptcy Court pursuant to Section 157(b)(2) of Title 28 thereof, and General Order Nos. 182 and 223 of the United States District Court for the Easter District of California.

7. Plaintiffs consent to the entry of judgment and final orders by the Bankruptcy Court.

8. Venue is appropriate in this court pursuant to 28 U.S.C. § 1409(a).

**FACTS COMMON TO ALL COUNTS**

9. In 2000, Plaintiff Jaskaran, Defendant Bhajan, and a third party, Nirmal Sihota ("Nirmal"), contributed equal amounts to purchase two (2) properties referred as Kamm and Thompson, each with a one-third share in each of the two properties.

10. Plaintiff Jaskaran, Defendant Bhajan, and Nirmal entered into a partnership agreement regarding the Kamm and Thompson properties.

11. The partnership agreement was drafted by Nirmal's real estate agent and signed without independent legal advice.

12. The Kamm and Thompson properties were divided into three plots.

13. Nirmal was afforded the right to manage the properties.

14. In 2008, SSS International Inc. was formed.

15. There were 15 shares of SSS International, Inc. each of which was purchased for $100,000 apiece.

16. The ownership of the 15 shares was as follows:

| **Owners** | **No. of Shares** | **Owner** | **No. of Shares** |
|---|---|---|---|
| Nirmal Sihota | Two (2) | Arvinder Sihota | One (1) |
| Narinder Sihota | One (1) | Bhajan Singh, defendant | Seven (7) |
| Jaskaran Sihota, plaintiff | Two (2) | Kewal Singh, plaintiff | One (1) |
| Jaswinder Kaur, plaintiff | One (1) | | |

17. All shareholders contributed funds to purchase property referred to as Ducor Ranch.

18. On January 2, 2009, all shareholders of SSS International, Inc. contributed funds proportionate to their shares and purchased property referred to as Mountainview Ranch, with title held in Nirmal's name.

19. From 2008 through 2010, Nirmal was provided verbal authorization to act on behalf of all other shareholders for day-to-day management, and management of farming operations, of SSS International properties, along with the Kamm and Thompson properties.

20. In 2009, SSS International, Inc. was converted to SSS International, LLC in 2009, share ownership allocation noted above became voting interests in the LLC.

21. The members of SSS, LLC are the Plaintiffs and Defendant Bhajan Singh Sihota, along with Nirmal Sihota, Narinder Sihota, and Arvinder Sihota.

22. From mid-2010 to 2012, both Bhajan and Nirmal were jointly in charge of managing the SSS, LLC properties along with Kamm and Thompson, again pursuant to verbal authorizations provided by other shareholders.

23. Between 2008 to 2012 the Toronto Group received neither income nor accounting for the properties managed by Nirmal and Bhajan for all shareholders.

24. Bhajan represented to the Toronto Group that the properties owned by the LLC were incurring losses during this period. However, the Toronto Group has since learned this was untrue, and that SSS LLC properties made a net profit of $1,628,000 between 2008 and 2012.

25. On November 11, 2012, it was decided that the LLC would dissolve and to divide property owned by the partnership of Plaintiff Jaskaran, Defendant Bhajan, and Nirmal. the members of SSS, LLC entered into an agreement that outlined the division of amongst the members for the Ducor Ranch, Mountainview, and Kamm properties.

26. A dispute arose between Nirmal and Defendant Bhajan in the process of the property division and dissolution of SSS, LLC. This dispute dragged on for approximately a year until December 12, 2013, the members of SSS, LLC entered into an additional agreement regarding the terms for sharing farming equipment and clarifying debts of the members.

27. On or around December, 2012, the Toronto Group and Defendant Bhajan entered into a verbal agreement, wherein Bhajan was to form a corporation on behalf of the

Toronto Group and himself, the Plaintiffs and Defendant Bhajan being the only shareholders therein. Because he was local, Bhajan was to manage both his land and the Toronto Group's land, as well as Plaintiff Jaskaran's portion of the Kamm and Thompson properties. The newly formed corporation was to run farming operations on all the properties.

28. The agreement included a requirement that Defendant Bhajan was to provide accounting every three months to the Toronto Group.

29. Bhajan retained the services of his son, Defendant Bhupinder Sihota, to work on the farm. It later turned out that during the course and scope of his employment, Defendant Bhupinder was liable and responsible for destruction of equipment, had sold equipment, and had unjustly retained equipment rightfully belonging to the Toronto Group.

30. Defendant Bhajan represented to Plaintiffs that "Bhajan Singh Farms" was the corporation formed pursuant to the verbal agreement, and contended that he had outlined every partner's respective shares. In fact, Bhajan Singh Farms is a sole proprietorship.

31. The Toronto Group never received an accounting pursuant to the agreement with Defendant Bhajan.

32. In 2013, Defendant Bhajan paid Plaintiff Jaskaran a one-time payment of approximately $20,000. Defendant Bhajan claimed this amount was all of the past profits received from the farming and management of Jaskaran's portion of the Kamm and Thompson properties.

33. The Toronto Group has subsequently learned that $20,000 is in fact less than half of the profit that would be earned on Jaskaran's share of the Kamm and Thompson properties *in one year*. Plaintiff Jaskaran's portion of the Kamm and Thompson properties have

earned a profit every year since 2012, but Defendant Bhajan has never accounted therefore, nor apart from the sum listed paid Plaintiff Jaskaran therefore.

34. Furthermore, residential houses on the Kamm and Thompson properties have been continuously rented since 2012, yet Defendant Bhajan has never paid Plaintiff Jaskaran the rental income therefrom.

35. In January 2015, the Toronto Group requested the 2014 accounts from Bhajan numerous times. These requests took place in a series of telephone calls, during which Bhajan represented to the Toronto Group that 2014 had been a "really good" year and promised a detailed accounting by March 2015.

36. After the failure of Bhajan to provide any accountings, and discovering numerous irregularities related to the farming operations, and based on their belief that their property, monies (funds rightfully owed and belonging to the Toronto Group), had been transferred to or used by Bhajan to purchase property held by Bhajan for himself and his wife Balvinder Kaur; his daughter Jyoti and her husband Ajitpal Singh, and Defendant Bhupinder Sihota, the Toronto Group filed suit in Fresno County Superior Court on April 20, 2018.

37. The Plaintiff's suit alleged breach of contract, fraud. misrepresentation, breach of fiduciary duties, conversion, accounting, and breach of good faith and fair dealing.

38. The matter was referred to arbitration. On January 25, 2020, following a four-day arbitration, the Hon. Howard Broadman (Ret.) made the following findings:

a. That Bhupinder committed fraud, malice, and oppression, in withholding accounting and information from the Toronto Group.

b. That as a result of the actions of the Defendant, the Toronto Group was entitled to $616,236.60 in profit from 2013 – 2016 for the Ducor and Mountainview Properties.

c. That as a result of the foregoing actions of the Defendant, that Plaintiff Jaskaran was entitled $98,564.01 in profit from 2012 – 2016 from the Kamm Property.

d. That the Toronto Group was entitled to damages from Bhupinder in the amount of $40,000 for equipment destroyed, sold, and/or unjustly retained by Bhupinder.

e. That Jaskaran was entitled to damages from Bhupinder for failing to remit rental payments for a total of $61,545.21.

f. That attorneys fees paid by the Toronto Group related to the litigation with Nirmal be partially repaid to the Toronto Group, in the amount of $30,000.

g. Defendants Bhupinder is liable for punitive damages for their fraudulent actions to the Plaintiff in the amount of $100,000.

h. Attorneys fees were awarded to the Toronto Group in the amount of $300,000, and costs in the amount of $202,643.88.

39. Following the entry of this arbitration award, the Defendant filed a petition for bankruptcy protection.

**FIRST CLAIM FOR RELIEF**

**Defendant Bhupinder's Debts are Non- Dischargeable Because He Committed Willful and Malicious Injury to Plaintiffs and Their Property (11 U.S.C. § 523(a)(6)**

40. The allegations of paragraphs 1 through 39 are realleged and incorporated herein.

41. At all times relevant hereto, and in making each and every of the representations cited hereinabove, Defendant Bhupinder acted willfully against the Toronto Group, in that he had the subjective motive or intent to harm the Toronto Group for his own benefit in making the Representations, and he believed that injury to the Toronto Group was substantially certain to occur as a result of making the Representations.

42. Defendant Bhupinder acted maliciously against the Plaintiffs in destroying, selling, or converting equipment and property of the Plaintiffs.

43. Judge Broadman, in rendering his arbitration award, specifically found that that Defendant Bhupinder had acted with “fraud, malice, and oppression” in his intentional acts towards the Plaintiffs of withholding information and, consistent with this finding he imposed punitive damages against Defendants.

WHEREFORE, the Plaintiffs having set forth his claims for relief against the Defendants respectfully pray of the Court as follows:

a. That judgment be entered for Plaintiffs against Defendants at an amount to be determined at trial;

b. That the claim of the Plaintiffs against Defendants is nondischargable under 11 U.S.C. § 523(a)(6);and

c. For such other and further relief as this Honorable Court shall deem just and proper.

Dated: 7/10/2020

FEAR WADDELL, P.C.

By: /s/ Peter A. Sauer
Peter A. Sauer, Attorney for Plaintiff